# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2796

_____

Claud Sloan,                                          *
                                                     *
              Appellee,                              *
                                                     *  Appeal from the United States
       v.                                            *  District Court for the
                                                     *  District of North Dakota.
Hartford Life and Accident                           *
Insurance Company,                                   *
                                                     *
              Appellant.                             *

_____

Submitted: December 14, 2006
Filed: January 29, 2007

_____

Before BYE, COLLOTON, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

Hartford Life and Accident Insurance Company (Hartford) appeals the district court's[1] determination[2] Claud Sloan qualifies for long-term disability benefits under a plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461. We affirm.

_____

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

[2]The district court's decision is reported at Sloan v. Hartford Life & Accident Insurance Co., 433 F. Supp. 2d 1037 (D.N.D. 2006).

I

In 1983, Claud Sloan began working for the ANG Coal Gasification Company, which subsequently provided him with long-term disability benefits under an ERISA plan issued by Confederation Life Insurance Company (Confederation). On December 31, 1985, a hydraulic door came down on the back of his head and neck and fractured his C3 vertebrae. After rehabilitation, he tried returning to work. On February 5, 1987, unable to continue working because of his accident, he applied for disability benefits.

The plan provided for twenty-four months of disability benefits if Sloan was unable to perform the duties of his "own occupation." After twenty-four months, he could receive benefits only if he was "unable to perform the essential duties of any occupation[.]" He received twenty-four months of benefits under the "own occupation" standard. Confederation initially denied benefits under the "any occupation" standard, but reversed its decision following Sloan's administrative appeal. The letter informing him of his right to long-term disability benefits stated:

> You have made a strong case for Total Disability which could translate well into a Social Security pursuit. Our definition of Total Disability after 24 months is very similar to the definition used by Social Security. Since we are admitting Mr. Sloan as Totally Disabled from all occupations, he should reapply for Social Security Disability benefits and pursue it to all levels if necessary.

Sloan applied for social security disability benefits in 1988, 1990, and 1995. Each time he was denied.

Sloan continued receiving long-term disability benefits for several years while the plan was administered by Confederation. In 1997, the administration and liability of the plan transferred from Confederation to Hartford. After the transfer, Hartford

decided to review Sloan's claim, which included asking him to undergo an independent functional capacity evaluation, reviewing his medical records, interviewing him and his treating physicians, and performing surveillance on him. On November 22, 2000, following its review, Hartford terminated his disability benefits. He filed an administrative appeal. On May 14, 2001, Hartford upheld the decision to terminate Sloan's benefits.

After being terminated from long-term disability benefits, Sloan tried to work part-time as a courtesy driver beginning in August 2001. He worked until March 2002, but quit due to continued pain and fatigue, telling his treating physician he "just could not keep doing what he was doing" and "could not live like that." After a full examination, his treating physician's notes state, "I don't see that [Sloan] needs to focus on getting work right now as this would be very difficult for him. He is easily overwhelmed; in fact, I don't see him as ever working as gainfully employed."

On January 25, 2002, Sloan filed his fourth application for social security disability benefits. He also commenced an action against Hartford in state court seeking reinstatement of his long-term disability benefits. Hartford removed the action to federal district court. Sloan and Hartford agreed to dismiss the federal action, however, to allow him to pursue his Social Security appeal because Hartford was entitled to offset social security benefits he might receive from any disability benefits that may be owed under the plan. Following the stipulation, the district court dismissed the action without prejudice.

Sloan's fourth application for social security benefits was initially denied, but after multiple appeals, was ultimately reopened. At an administrative hearing, he introduced a letter from Dr. Roger Kennedy dated March 26, 2003. The letter was generated in response to a questionnaire sent to the doctor by Sloan's attorney. Dr. Kennedy's letter states in relevant part:

# 1 I was Claud's treating physician from 1/23/86 through 10/2/89.

# 2 I did understand that Claud's work was sedentary but was scheduled in 12-hr shifts with his being able to sit and stand at will.  I couched "other work restrictions" in some specifics to exclude anything other than sedentary work.  I also understood that he could only work for very short periods of time without making his pain intolerable.  He was able to work approximately 50% of the expected work shift.

# 3 At no time since 3/5/87, has Claud been able to perform even sedentary work on a regular daily basis for 40hrs/week because of his disabling pain.

# 4 His complaints of pain, though unusually severe, seem credible and quite reasonable when related to the unusually severe neck injury which he sustained.  Some injuries simply cause persistent, disabling pain which may not be amenable to treatment.  The mechanism of his injury would seem quite consistent with soft-tissue injury to his neck skeletal structures and swallowing mechanism – all of which show relatively little structural changes on exams, X-rays and scans.

# 5 Prescription narcotic medications certainly can dull people's thought processes, memory and judgment which in turn can endanger themselves and others.  I really can't speak specifically about this in Claud's case.

# 6 Yes. Even frequent position changes at will did not seem to effectively alleviate his pain.

# 7 Lifting any significant amount of weight, if it increases his pain and interferes with his work ability is considered contraindicated, simply as another means of making his pain manageable enough that he could continue to work.
. . . . .

# 9 The need for rest and frequent change of position seems credible and reasonable.

Sloan also testified before the Administrative Law Judge (ALJ) at the hearing, describing how his injuries and resulting pain affected his ability to work. Following the hearing, the ALJ issued a decision finding him disabled as of February 5, 1987, giving great weight to Dr. Kennedy's letter and finding Sloan's testimonial allegations of pain "credible and persuasive." The favorable award entitled him to social security disability benefits retroactive to January 2001, or 12 months prior to his last application for social security benefits. See 20 C.F.R. § 404.621 (indicating a successful claimant "may receive benefits for up to 12 months immediately before the month in which your application is filed"); 42 U.S.C. § 423(b) (same).

On January 28, 2005, armed in part with the favorable social security decision, Sloan refiled suit against Hartford in federal district court seeking reinstatement of his long-term disability benefits retroactive to November 1, 2000, the effective date of Hartford's termination. Both parties filed motions for summary judgment, which the district court denied. The district court set the case for a bench trial, but the parties agreed to forego a bench trial in favor of proceedings on the briefs and a stipulated fact record.

Sloan filed a motion for introduction of additional evidence outside the administrative record, i.e., the favorable social security decision and the medical records contained in the social security administrative record. The district court granted his motion, finding good cause existed under the circumstances present in this case. Sloan v. Hartford Life & Accident Ins. Co., 433 F. Supp. 2d 1037, 1039 (D.N.D. 2006).

Because the plan did not grant Hartford discretion to interpret plan language or determine eligibility for benefits, the district court applied de novo review to determine whether Sloan qualified for long-term disability benefits. Id. at 1047-48. Under that standard, the district court determined he was entitled to disability benefits. The district court based its decision, in part, on a conclusion the plan was ambiguous

with respect to whether long-term disability benefits were owed only to a claimant who could not engage in any work – whether part-time *or* full-time – or whether a claimant who could work part-time was still entitled to benefits. The district court construed the ambiguity against Hartford and concluded the plan provided benefits to a claimant who could work part-time. In the alternative, the district court found as a matter of fact that Sloan could not engage in even part-time work, basing its finding upon the medical evidence in the record, the favorable social security decision, and Sloan's failed attempt to work part time in late 2001 and early 2002. Id. at 1049-50.

Because Hartford was allowed to offset the social security disability benefits Sloan was entitled to receive as of January 2001, the district court calculated the amount of past due disability benefits Hartford owed after offsetting social security benefits, as follows:

- From November-December 2000, the full amount of LTD benefits amounts to $1,701 per month for a total of $3,402;

- Beginning January 2001, through May 2006, Hartford Life owed the sum of $443 per month (original LTD benefits of $1,701 less monthly Social Security disability benefits of $1,258), which equates to 65 months at $443 per month for a total of $28,795;

- The total award of past due disability benefits owed from October 1, 2000, through May 31, 2006, amounts to the sum of $32,197.

Id. at 1051.

Hartford filed a timely appeal. On appeal, Hartford contends the district court abused its discretion in admitting evidence outside the administrative record, erred in determining the Plan was ambiguous with respect to the issue of part-time work, and clearly erred in determining Sloan was totally disabled from performing even part-time work. Finally, Hartford contends that, even if the district court correctly

determined he was totally disabled, it erred by calculating the past due benefits instead of remanding the claim to allow Hartford to calculate the amount of the social security offset.

## II

We first examine the district court's decision to admit Sloan's favorable social security decision. In a de novo ERISA case, we review a decision to consider evidence outside the administrative record for an abuse of discretion, noting "the district court should not exercise this discretion absent good cause to do so." Donatelli v. Home Ins. Co., 992 F.2d 763, 765 (8th Cir. 1993). In determining whether good cause exists, we have focused in large part on whether the claimant had an opportunity to present the additional evidence during the administrative proceedings. An opportunity and failure to present the additional evidence shows a lack of good cause. Davidson v. Prudential Ins. Co., 953 F.2d 1093, 1095 (8th Cir. 1992).

Sloan did not have an opportunity to present the favorable social security decision during the administrative proceedings because the ALJ did not issue its decision until December 2003, well after the final administrative decision was made in May 2001. Hartford complains the district court admitted medical evidence included in the social security record that was in existence before the close of the administrative proceedings, and thus Sloan had an opportunity to present this evidence in the administrative proceedings. Hartford's argument fails, however, because the medical evidence referenced actually was submitted in the administrative proceedings; thus, the district court's admission of it as part of the social security record was merely duplicative. As to the duplicative medical evidence contained in both the administrative record and the social security record, the district court did not abuse its discretion.

Turning to the nonduplicative new evidence considered by the district court, the district court gave four reasons for admitting the additional evidence : 1) Hartford stipulated to the dismissal of the first federal court action for the specific purpose of allowing Sloan to pursue his social security claim; 2) the social security definition of disability is very similar to the definition of disability in the plan; 3) the district court considered the ALJ's credibility determinations regarding Sloan's subjective complaints of pain to be highly probative of the ultimate question of disability; and 4) equity weighed in his favor because he had received disability benefits for nearly thirteen years before Hartford's termination. Sloan, 433 F. Supp. 2d at 1038.

The second and third reasons given by the district court are sufficient to support its decision. As acknowledged by Confederation in the letter informing Sloan of his right to long-term disability benefits, the plan's "definition of Total Disability after 24 months is very similar to the definition used by Social Security." A social security disability determination is generally admissible evidence to support an ERISA claim for long-term disability benefits. See Reidl v. Gen. Am. Life Ins. Co., 248 F.3d 753, 759 n.4 (8th Cir. 2001). In the absence of Sloan's opportunity to present this relevant evidence during the administrative proceedings, we are hard-pressed to conclude the district court abused its discretion in considering it, especially when Hartford has not referred us to anything in particular about this case which would make consideration of relevant evidence an abuse of discretion. In addition, because the parties agreed to forego a bench trial in favor of proceeding on the briefs and a stipulated fact record, we understand why the district court would consider the ALJ's view of Sloan's credibility to be highly probative, because the district court did not have its own opportunity to evaluate his credibility in a full bench trial. Finally, we see nothing improper about the first and fourth reasons given by the district court for admitting the evidence. We therefore conclude the district court did not abuse its discretion by considering the additional evidence.

We turn next to the district court's finding that Sloan qualifies for long-term disability benefits. Hartford challenges both the district court's determination the plan was ambiguous as to whether a claimant could receive long-term disability benefits when able to work part-time, and the district court's ultimate determination he qualified for disability benefits in any event because he could not even work part-time. If the district court's ultimate determination is sound, it will be unnecessary to address any alleged ambiguity about part-time work, and thus we first address Hartford's second challenge.

The district court's finding that Sloan qualifies for long-term disability benefits is a finding of fact subject to the clearly erroneous standard of review. Donatelli, 992 F.2d at 765. "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985). "The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court." Id.

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. . . . Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much. . . . [T]he trial on the merits should be the main event rather than a tryout on the road.

Id. at 573-75 (internal quotations and citations omitted).

The outcome in this case is driven by the applicable standard of review. Under the clear error standard, there is enough evidence to support the district court's findings. Sloan was considered eligible for long-term disability benefits for an uninterrupted period of almost thirteen years. The recent finding of disability under the rigorous social security standard, with a disability onset date of February 1987, confirms the validity of his eligibility for benefits during that period of time. The ALJ found his subjective complaints of disabling pain credible, as did his treating physicians. His reported daily activities were consistent with an inability to maintain a job on a regular basis, even a part-time job. He tried to go back to work part-time in late 2001 and early 2002, and the medical evidence in the record indicates he was unable to sustain the part-time job. All of this evidence supports the district court's factual determinations. Although Hartford can point to evidence in the record which tends to show he was not disabled, that is not enough for us to conclude the district court clearly erred. See Anderson, 470 U.S. at 574 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

Finally, we address Hartford's contention the district court erred by calculating the amount of past due benefits instead of remanding the case to give Hartford the first opportunity to calculate the amount administratively. In its calculations, the district court offset social security disability benefits beginning in January 2001, when Sloan actually began receiving those benefits. Hartford contends the plan may permit it to offset social security benefits even before he began receiving them, and thus Hartford should have been given the first opportunity to interpret the plan and calculate the offset.

The plan language upon which Hartford relies states Hartford's monthly obligation to pay long-term disability benefits may be offset by the amount of social security benefits "paid, payable, or for which there is a right." Hartford further relies on the district court's statement: "Sloan was entitled to disability benefits beginning

on February 5, 1987." Sloan, 433 F. Supp. 2d at 1038. Putting this statement together with the plan language, Hartford contends it may be entitled to offset social security disability benefits dating as far back as February 5, 1987 (even though Sloan never received social security disability benefits between February 1987 and January 2001) because the plan allows Hartford to offset social security benefits "for which there is a right" even if the benefits were not received.

We reject Hartford's argument out of hand because it is based on a flawed premise. The district court misspoke when it said Sloan was entitled to social security benefits beginning on February 5, 1987. What it meant to say was he had a disability onset date of February 5, 1987. The district court made this clear later in its decision. Compare Sloan, 433 F. Supp. 2d at 1038 (referring to the "favorable Social Security decision . . . finding that Sloan was entitled to disability benefits beginning on February 5, 1987") with id. at 1047 (referring to the ALJ's finding that Sloan "has been under a disability as defined by the Social Security Act and Regulations since February 5, 1987").

A disability onset date is not always the same as the date a claimant has the right to receive benefits. Sloan made three unsuccessful applications for social security disability benefits in 1988, 1990, and 1995. His unsuccessful applications clearly precluded him from having a "right" to receive benefits during that period of time. Under the pertinent social security statute and regulation, he only had a "right" to social security disability benefits dating back twelve months from his fourth and only successful application for benefits, which was filed January 25, 2002. See 20 C.F.R. § 404.621 (indicating a successful claimant "may receive benefits for up to 12 months immediately before the month in which your application is filed"); 42 U.S.C. § 423(b) (same).

Because there is simply no legitimate basis for Hartford's contention regarding a potential offset of social security benefits at a point in time earlier than January

-11-

2001, the district court committed no error when it failed to remand the case to allow Hartford the first opportunity to calculate the offset administratively.

## III

We affirm the district court's well-reasoned decision in all respects.

_____