# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-2862
_____

Kelsey Weyer

*Plaintiff - Appellee*

v.

Reliance Standard Life Insurance Company

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: May 8, 2024
Filed: July 30, 2024
_____

Before COLLOTON, Chief Judge, SHEPHERD and STRAS, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Reliance Standard Life Insurance Company appeals the district court's[1] order granting judgment on the administrative record to Kelsey Weyer on her claim that Reliance Standard's denial of long-term disability benefits violated the Employee

---

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, now retired.

Retirement Income Security Act of 1974 (ERISA). Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

Weyer applied for long-term disability benefits under a policy issued to her by Reliance Standard through her employer. Weyer has a host of medical conditions, including chronic fatigue syndrome/myalgic encephalomyelitis, Lyme disease, migraine headaches, neurocognitive disorder, brain fog, clostridium difficile colitis, irritable bowel syndrome, HHV-6, and malnourishment. She also has a history of anxiety and depression.

Reliance Standard's policy provides that an individual is entitled to benefits if she is "Totally Disabled." The policy defines "Totally Disabled" in one of two ways, depending on the applicable time period. For the first twenty-four months of benefits, an individual is "Totally Disabled" if she "cannot perform the material duties of [her] Regular Occupation." After twenty-four months, that individual remains "Totally Disabled" if she "cannot perform the material duties of Any Occupation," which is defined as "an occupation normally performed in the national economy for which [the individual] is reasonably suited based upon [her] education, training or experience." The policy also contains another provision relevant to this appeal, which limits payable benefits to "an aggregate lifetime maximum duration of twenty-four (24) months" if the individual's "Total Disability [is] caused by or contributed to by mental or nervous disorders." (MND Clause).

Reliance Standard approved Weyer's claim, finding her "Totally Disabled," and paid benefits for twenty-four months. After twenty-four months, Reliance Standard terminated those benefits, finding that Weyer did not satisfy the more stringent "Any Occupation" standard because Weyer could perform various sedentary jobs. It also found that her anxiety and depression contributed to her disability. Weyer filed an administrative appeal, submitting additional evidence from several doctors and clinicians. Reliance Standard sought independent review

of Weyer's medical records and her additional evidence and ultimately upheld its decision. Weyer then commenced this lawsuit, arguing that the denial of continued benefits violated ERISA.

The parties filed cross-motions for judgment on the administrative record, and the district court ruled in Weyer's favor. The district court found that the record evidence did not "suggest that Weyer's depression and anxiety *caused or contributed* to her inability to work," rejecting Reliance Standard's contention that the MND Clause in the policy applied. Moreover, the district court held that Weyer was totally disabled under the policy's applicable "Any Occupation" standard, citing evidence in the record from both Weyer's physicians and the physicians who performed the independent review. Reliance Standard now appeals, arguing that (A) Weyer was not totally disabled and (B) even if Weyer was totally disabled, her mental health disorders caused or contributed to her total disability such that the MND Clause should have applied. We address each contention in turn.

II.

The parties agree that the district court had authority to review Reliance Standard's denial of ERISA benefits de novo because Reliance Standard lacked discretionary authority to determine eligibility for benefits or to construe the plan's terms. See Johnson v. United of Omaha Life Ins. Co., 775 F.3d 983, 986-87 (8th Cir. 2014). "When the district court has conducted a de novo review of an ERISA fiduciary's denial of benefits, we review the [district] court's findings of fact under our customary clearly erroneous standard." Id. at 987 (alteration in original) (citation omitted); see also Sloan v. Hartford Life & Accident Ins. Co., 475 F.3d 999, 1005 (8th Cir. 2007) (reviewing for clear error district court's determination that plaintiff qualified for long-term disability benefits because he lacked work capacity). We review any legal conclusions de novo. See Avenoso v. Reliance Standard Life Ins. Co., 19 F.4th 1020, 1026 (8th Cir. 2021). "Clear error exists where, viewing the record as a whole, we are left with the definite and firm conviction that a mistake

-3-

has been committed." Oden v. Shane Smith Enters., Inc., 27 F.4th 631, 633 (8th Cir. 2022) (citation omitted).

A.

Reliance Standard first argues that the district court clearly erred in finding Weyer was totally disabled. We disagree. After twenty-four months of benefits, Weyer was entitled to continued benefits if she was unable to perform the material duties of any occupation. Reliance Standard identifies evidence in the record suggesting that Weyer at least possessed the capacity to perform sedentary work. However, as the district court noted, there was also overwhelming evidence in the record that Weyer lacked sedentary-work capacity. And it is well established that "the court of appeals may not reverse [on clear-error review] even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Avenoso, 19 F.4th at 1028 (alteration in original) (citation omitted) (finding no clear error in district court's conclusion that plaintiff lacked sedentary-work capacity where there was both evidence suggesting and tending to negate that plaintiff lacked sedentary-work capacity).

The evidence relied on by the district court in finding Weyer lacked any work capacity is not unlike the evidence the district courts in Avenoso and Sloan relied on in reaching the same conclusion—decisions which this Court affirmed. In each of those cases, the district court "found that the plaintiff was totally disabled based on a 'finding of disability under the rigorous social security standard,' 'subjective complaints of disabling pain,' and some favorable 'medical evidence.'" Id. (quoting Sloan, 475 F.3d at 1005-06). Here, the district court identified evidence from five doctors who either treated Weyer or reviewed her medical records that supported its

-4-

conclusion that, because Weyer was unable to work in any capacity, Weyer was totally disabled.[2]  For example, one of Weyer's treating physicians noted:

> The medical restrictions that have been placed on Mrs. Weyer by myself are direction not to engage in any physical or mental activities that result in post-exertional fatigue, malaise and pain.  Currently[,] that translates into being sedentary, couch or bed-bound the majority of days.  Her activity limit is currently approximately 45 minutes of a gentle stroll several days per week.  She is largely prohibited from any mental exertion[,] whether it involves reading, computer time, or interacting with others after approximately noon each day due to the encephalopathy symptoms.   She is incapable of the majority of activities of daily living and maintaining a household. . . . She cannot drive more than five minutes in her local neighborhood and is under medical direction not to drive at all.  She cannot maintain any social relationships outside of her nuclear family due to the prevalence of symptoms.  Any attempts to force activity[,] whether it be mental, physical or emotional simply result in being bedbound for hours to days afterward.

Another physician explained that:

---

[2]While the district court's order purported to rely on several physicians' determinations that Weyer was totally disabled and unable to regain any work capacity, we note that: first, the district court's order was not a full recitation of the physicians' opinions but a summary of the voluminous record that included the extensive functional limitations placed on Weyer by these physicians; and second, to the extent these opinions include inappropriate legal conclusions to which we need not give controlling weight, cf. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) (remarking, in the social security context, that doctors' comments that patient was totally disabled and that patient's disability would make it difficult to work were inappropriate legal conclusions entitled to little weight), we may affirm the judgment of the district court on any basis in the record, Adam & Eve Jonesboro, LLC v. Perrin, 933 F.3d 951, 958 (8th Cir. 2019).  Here, the record is replete with evidence supporting the district court's conclusion that Weyer is totally disabled because of various functional limitations placed on her by her physicians.

Ms. Weyer continues to present with chronic migraines almost daily despite ongoing treatment. Ms. Weyer can easily experience headaches and/or migraines 5 out of 7 days a week. Common triggers for her migraines are screentime[,] such as looking at a computer screen or technology, reading and/or writing, cognitive effort, and driving. . . . Ms. Weyer also experiences poor concentration and focus, brain fog and visual distortions[,] all of which make it difficult for Ms. Weyer to drive a car, follow a conversation, follow instruction, use a computer, or stay on task. . . . Ms. Weyer's fatigue is also chronic and debilitating. Even if Ms. Weyer is sitting, she still requires sleep and/or rest throughout the day.

In addition, the district court considered Weyer's favorable Social Security Administration disability determination, which it noted supported Weyer's position, see Avenoso, 19 F.4th at 1027 ("[T]he Social Security Administration's determination . . . is admissible evidence to support an ERISA claim for long-term disability benefits." (citation omitted)), and discredited a thirteen-minute video Reliance Standard submitted purporting to show Weyer mowing the lawn because "[n]othing in the record identifie[d] [Weyer as] the individual mowing the lawn." The district court also acknowledged that even if Weyer was the individual in the video, this evidence was not conclusive that Weyer was able to work, as "the video [was] only a 13-minute video of the individual mowing the lawn," which was consistent with one physician's opinion that Weyer could "occasionally on a good day be able to push a lawnmower over a small yard."

On the other hand, the district court also acknowledged evidence from another doctor that supported Reliance Standard's position that Weyer possessed sedentary-work capacity and therefore was *not* totally disabled. However, this evidence, and Reliance Standard's identification of other evidence supporting its position that Weyer could perform certain types of work, convinces this Court that, at best, "there are two permissible views of the evidence," id. at 1028, a determination which "is not enough for us to conclude the district court clearly erred," Sloan, 475 F.3d at 1006. Reliance Standard has not pointed to any evidence in the record "leav[ing] us with a definite and firm conviction a mistake has been

made." Buchl v. Gascoyne Materials Handling & Recycling, L.L.C., 100 F.4th 950, 962 (8th Cir. 2024). Accordingly, the district court did not clearly err in finding that Weyer lacked the ability to perform any occupation. And because Weyer was unable to perform any occupation, she was "Totally Disabled" under the terms of her policy. See Avenoso, 19 F.4th at 1027 ("[W]hether the district court's decision survives *de novo* review of its legal determinations . . . turns on whether [it] clearly erred in finding that [the policyholder] lacks sedentary work capacity.").

B.

Reliance Standard alternatively asserts that, even if Weyer is totally disabled, her mental health disorders caused or contributed to her total disability, so the MND Clause should have applied. Recall that the MND Clause provides that "Monthly Benefits for Total Disability caused by or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months." Reliance Standard argues—and Weyer agrees—that under the policy's "caused by or contributed to by" language, the appropriate standard is "but-for" causation; that is, Weyer's anxiety and depression caused or contributed to her total disability (and thus, the MND Clause limits benefits to twenty-four months) if, but for her anxiety and depression, she would not be totally disabled. Put differently, this means that if her "physical disability were independently sufficient to render [her] totally disabled, [her] eligibility for benefits would not terminate after twenty-four months because [she] also suffered from a mental condition." Michaels v. Equitable Life Assurance Soc'y of U.S. Emps., Managers & Agents Long-Term Disability Plan, 305 F. App'x 896, 904 (3d Cir. 2009) (interpreting a similarly worded mental illness limitation).

We agree that the MND Clause would limit Weyer's benefits to twenty-four months if, but for her anxiety and depression, she would not be totally disabled, as her physical conditions must independently render her unable to work. This but-for approach accords with the opinions of our sister circuits addressing this "caused by or contributed to by" plan language in similar mental-illness limitations in long-term

disability policies.  See id.; George v. Reliance Standard Life Ins. Co., 776 F.3d 349, 355-56 (5th Cir. 2015) (adopting the holdings of each federal circuit court to have addressed the meaning of "caused by or contributed to by" in similar exclusion clauses as "exclud[ing] coverage only when the claimant's physical disability was insufficient to render him totally disabled.  In other words, those courts have asked whether the mental disability is a but-for cause of the total disability."); Okuno v. Reliance Standard Life Ins. Co., 836 F.3d 600, 609 (6th Cir. 2016) ("We follow the analyses of our sister circuits [interpreting the meaning of "caused by or contributed to by"] and apply the but-for inquiry to the Mental and Nervous Disorders Limitation . . . ."); cf. Gunn v. Reliance Standard Life Ins. Co., 399 F. App'x 147, 153 (9th Cir. 2010) (affirming plan administrator's denial of benefits because it "was grounded on a reasonable factual basis for concluding that [claimant's physical impairment] alone was not disabling, and that, but for his psychiatric mental and nervous disorders, he would be able to work").

Reliance Standard contends that the district court failed to adequately consider whether Weyer's anxiety and depression were but-for causes of her inability to work because it placed too much emphasis on one physician's opinion that Weyer's anxiety and depression were simply "downstream effects" of her physical illness and ignored myriad evidence that Weyer's mental illnesses "have, at the very least, *contributed* to her disability."  We disagree.

Sitting as factfinder, the district court was permitted to weigh the evidence.  See Avenoso, 19 F.4th at 1026.  The district court cited several opinions in the record as examples that supported its conclusion that Weyer's physical conditions independently rendered her unable to work.  Based on the entirety of the record, we find no clear error in this conclusion.  For example, one physician placed several restrictions on Weyer, including severely limiting her physical activity and "largely prohibit[ing] [her] from any mental exertion," including reading and computer time, because of her encephalopathy.  The physician noted Weyer's inability to perform daily activities, maintain her household, drive longer than five minutes, or maintain social relationships because of her physical symptoms.  Because there is evidence in

the record that Weyer's myriad physical conditions independently rendered her totally disabled, Reliance Standard's identification of competing evidence suggesting Weyer's anxiety and depression impacted her ability to work does not compel a conclusion that the district court clearly erred.  See Avenoso, 19 F.4th at 1028.

## III.

Finding no clear error in the district court's de novo review of Reliance Standard's denial of long-term disability benefits, we affirm.

_____