# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-50368

United States Court of Appeals
Fifth Circuit

**FILED**

January 15, 2015

Lyle W. Cayce
Clerk

ROBERT GEORGE,

Plaintiff - Appellant

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before KING, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge.

Appellant Robert George ("George") appeals from the district court's final judgment affirming the decision of the ERISA[1] plan administrator in relevant part. For the reasons explained below, we REVERSE and RENDER judgment for George. We REMAND the case to the district court to determine the amount of benefits to award to George.

---

[1] Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

No. 14-50368

## FACTS AND PROCEEDINGS

George served as a helicopter pilot in the United States Army. In 1985 George was injured in a helicopter crash, and doctors were forced to amputate one of his legs at the knee. George retired from military service in 1987. After retiring, George began flying helicopters for PHI, Inc. ("PHI"). PHI purchased a long-term disability insurance policy (the "Policy") for George from Appellee Reliance Standard Life Insurance Co. ("RSL"). George flew for PHI for more than twenty years. But in 2008 he began experiencing severe pain at the site of his amputation, which prevented him from safely wearing his prosthetic limb. As a result, he was no longer able to operate the foot controls of a helicopter, and he was forced to retire from flying. At that time, he was earning $75,495 per year. George filed a claim for long-term disability benefits with RSL.

The Policy contains two definitions of "Totally Disabled" and "Total Disability," which apply during different time periods.[2] During "the first 24 months for which a Monthly Benefit is payable," these terms mean that the insured "cannot perform the material duties of his/her Regular Occupation." After the first 24 months, these terms mean that the insured "cannot perform the material duties of any occupation which provides substantially the same earning capacity." The Policy also contains a relevant limitation provision (the "Exclusion Clause"). The Exclusion Clause provides that "Monthly Benefits for Total Disability caused by or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months." The Policy defines "Mental or Nervous Disorders" to include "anxiety disorders" and "mental illness."[3]

---

[2] We will use the terms "Totally Disabled" and "Total Disability" interchangeably.

[3] We will use the term "mental disability" when we refer to the "Mental or Nervous Disorders" identified in the Policy.

No. 14-50368

RSL denied George's claim for long-term disability benefits in a series of letters. RSL's findings and conclusions, and George's objections, can be summarized as follows. First, RSL found that George was "capable of sedentary exertion work with the ability to stand and stretch, with permanent restrictions to standing, lifting, carrying or over head work," and that George could work as a "Protective-Signal Operator; Crew Scheduler; and Aircraft-Log Clerk."[4] Because George could fulfill the duties of the alternative occupations, RSL determined that George was not Totally Disabled under the definition of that term that applied after 24 months. George responded by arguing that "none of the identified positions pa[id] anywhere close to the salary he was making" when he stopped flying for PHI. As proof of his contention, George attached printouts from the website "SimplyHired.com," which showed that the average salaries for the positions identified by RSL were $36,000, $40,000, and $28,000 respectively. RSL dismissed George's evidence because it "[could not] ascertain if these materials were prepared by vocational expert[s]," "the Internet papers all stem[med] from the same website, versus as deriving from differing sites and being compared and contrasted by an expert," and George failed to attach "any labor market studies completed to substantiate [his] argument."

Second, RSL determined that George's "psychiatric conditions of depression and post traumatic stress disorder ('PTSD') *contributed to*' his overall impairment status" since his retirement in 2008. Thus RSL determined that George's claim for long-term disability benefits was "subject to a Maximum Duration of Benefits of twenty-four (24) months" under the Exclusion Clause. George contended that, "[c]onsidering only his physical ailments and impairments, the record is clear that [he] cannot continue his

---

[4] We will refer to these occupations as the "alternative occupations."

3

usual occupation or engage in an occupation that pays substantially the same as his usual occupation." Accordingly, George asserted that "a mental/nervous issue, if any, does not contribute to [his] disability."

George sought review of RSL's decision in the district court under 29 U.S.C. § 1132(a)(1)(B). The parties agreed that the Plan's language granted RSL discretionary authority to determine eligibility and to construe the terms of the Plan. Thus the district court reviewed RSL's decision under the abuse of discretion standard. The district court held that the evidence supported RSL's determination that George's depression and PTSD contributed to his Total Disability. Based on this finding, the district court held that RSL did not abuse its discretion by determining that the Exclusion Clause limited George's right to benefits. The district court did not reach the question whether George was Totally Disabled under the Policy.

## STANDARD OF REVIEW

On appeal from a bench trial, this court "review[s] the factual findings of the trial court for clear error" and "conclusions of law *de novo*." *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 350 (5th Cir. 2002). "Under de novo review, we apply the same standard to the Plan Administrator's decision as did the district court." *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009). "[W]hen an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). The parties do not dispute that RSL had discretionary authority with respect to the benefits determination at issue here.

4

No. 14-50368

An ERISA claimant bears the burden to show that the administrator abused its discretion. *See Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 512-13 (5th Cir. 2010). "A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland*, 576 F.3d at 246 (internal quotation marks omitted). Similarly, a decision constitutes an abuse of discretion "only if it is 'made without a rational connection between the known facts and the decision or between the found facts and the decision.'" *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 508 (5th Cir. 2013) (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)).

## DISCUSSION

### I.

We first consider whether we should decide this case on the ground that George failed to carry the burden to show his right to benefits.

Neither party cites a controlling opinion that holds that a claimant bears the burden to show a right to benefits during the initial claims proceeding.[5] During oral argument, however, George's counsel conceded that George bore the initial burden to show a right to benefits. Thus we assume without deciding that George bore this burden.

Nevertheless, we hold that we are limited to considering whether the record supports the reasons that RSL provided to George *during the claims proceeding. See Spradley v. Owens-Ill. Hourly Emps. Welfare Benefit Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012) (holding same); *cf. Truitt*, 729 F.3d at 510

---

[5] RSL cites *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004), to support its argument that George bears the burden of proof to show that he is entitled to benefits. *Ellis* does not support that proposition. Instead, *Ellis* states that, in order to successfully appeal an administrator's denial of a claim, a claimant must do more than show that there is substantial evidence to support his claim. The claimant must show that substantial evidence *does not* support the administrator's position. *See id.*

No. 14-50368

(holding that our review of an administrator's decision to deny benefits "focus[es] on whether the record adequately supports *the administrator's decision*" (emphasis added) (quoting *Vega*, 188 F.3d at 298)). Allowing plan administrators to offer new justifications for a denial after the claims process has ended would undermine the claims system that Congress envisioned when it drafted ERISA's administrative review provisions. *See* 29 U.S.C. § 1133 (requiring administrator to give clear notice and providing for administrative review); 29 C.F.R. § 2560.503-1(g) (same); *Spradley*, 686 F.3d at 1140 (noting that Congress's purposes, as expressed in these provisions, would be undermined if administrators could add new rationales to support decision after claims process ends). "A plan administrator may not treat the administrative process as a trial run and offer a post hoc rationale in district [or circuit] court." *Spradley*, 686 F.3d at 1140-41 (internal quotation marks omitted).

RSL did not deny George's claim because he failed to carry his burden. RSL denied his claim because it determined that there was sufficient evidence in the record to show that he was not Totally Disabled and that, even if he was, a mental disorder contributed to this Total Disability. Because RSL denied George's claim on these grounds, those reasons will be the focus of our review.

Accordingly, we decline to consider whether George carried his burden to show a right to benefits.

## II.

### A.

George does not dispute the administrator's finding that he could perform sedentary work, or that he could work in the alternative occupations. Instead, George argues that there is no evidence in the record showing that

those occupations would provide substantially the same earning capacity that he enjoyed as a helicopter pilot.[6]

Under ERISA, an administrator abuses its discretion when there is not "substantial evidence" in the record to "support [its] decisions, including those to deny or to terminate benefits." *Ellis v. Liberty Life Assurance Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004). RSL rejected George's claim because: (1) it determined that he was "capable of sedentary exertion work," (2) its vocational expert had determined that George could work as a "Protective-Signal Operator; Crew Scheduler; and Aircraft-Log Clerk," and (3) it had therefore determined that George was not Totally Disabled under the Policy. We consider whether the facts asserted by RSL provide substantial evidence for its determination that George was not Totally Disabled.

We hold that RSL abused its discretion when it determined that George was not Totally Disabled. RSL fails to cite any evidence in the record that supports its conclusion that George's ability to perform sedentary work, and to work in the alternative occupations, would allow George to obtain "substantially the same earning capacity" that he obtained as a pilot. In our independent review of the record, we have also been unable to locate any evidence that supports RSL's conclusion.

To the contrary, the record suggests that RSL has attempted to ignore the Policy's similar income requirement. For example, RSL failed to mention the similar income requirement when it described the nature of its inquiry into George's claim. RSL stated that "[t]he purpose of [its] review was to determine if the medical data documents the presence of a physical condition that would

---

[6] As we explained above, after RSL pays disability benefits for 24 months, the definition of Total Disability and Totally Disabled changes to ask whether the claimant can "perform the material duties of any occupation which provides substantially the same earning capacity."

limit Mr. George's ability to perform any occupation for which he is vocationally suited, as is required by the group policy after benefits have been paid for twenty-four (24) months." RSL's refusal to consider George's evidence also suggests that RSL preferred to ignore the similar income requirement. In its letter to George, RSL suggests that only a report from a vocational expert could persuasively show that George was Totally Disabled under the Policy. But we have never required either an administrator or a claimant to hire a vocational expert to support its case. RSL then stated that it would continue to rely on its own expert's report, which was prepared by a qualified vocational specialist. This argument is a red herring: Even if RSL's report was prepared by an expert, RSL failed to argue in its letter to George, and never argued before this court, that the expert report contained any evidence that George could earn a substantially similar salary in another occupation.

RSL maintains that *Duhon v. Texaco, Inc.*, 15 F.3d 1302 (5th Cir. 1994), and *Cochran v. Hartford Life & Accident Insurance Co.*, No. 09-cv-11752, 2010 WL 259047 (E.D. Mich. Jan. 20, 2010), show that it did not abuse its discretion. Those cases are easily distinguishable. In *Duhon*, the relevant contract provided that the claimant was not disabled if he could work in "any job." *See Duhon*, 15 F.3d at 1307. The contract did not contain a similar salary requirement.[7] In *Cochran*, the contract contained a similar income requirement, but the ERISA administrator proffered evidence that other

---

[7] Additionally, in *Duhon*, this court's opinion turned in part on the "common—and uncontested—truth" that "people in their sixties and seventies who have similar physical and job limitations established by this record are employed and employable throughout the workplace today." *Id.* at 1308. We emphasized, however, that courts must consider ERISA disputes on a case-by-case basis. *Id.* at 1309. Considering the facts in this case, we note that it is neither commonly known, nor uncontested, that a person with George's education, experience, and a disability can earn $75,000 in a new career.

No. 14-50368

occupations "met the earning requirements under the Plan." *Cochran*, 2010 WL 259047, at *8.

There is no evidence in the record that shows that George could earn a substantially similar salary in another position. Thus there is no rational connection between the fact that George can do sedentary work, including the alternative occupations, and the conclusion that George could earn a substantially similar salary in any alternative position. Accordingly, we hold that RSL abused its discretion when it determined that George was not Totally Disabled.

**B.**

The district court held that RSL did not abuse its discretion when it determined that a mental disorder contributed to George's Total Disability. George argues that there is no evidence in the record to show that, absent his mental or nervous conditions, he could earn substantially the same amount in another occupation. RSL maintains that it did not abuse its discretion because George failed to show that he was "*physically* unable to perform the duties of *any* occupation." We consider whether there is a rational connection between the facts asserted by RSL and its decision that George's depression and PTSD contributed to his Total Disability.[8]

George concedes that his physical disabilities may allow him to perform some sedentary jobs, and neither party disputes that George is no longer physically capable of working as a helicopter pilot. Thus, the record supports the conclusion that George was physically capable of performing at least some

---

[8] "Because the parties have not briefed whether [RSL's] decision was 'legally correct,' but rather debate whether the benefits denial ultimately was an 'abuse of discretion,'" we need not decide whether RSL's interpretation of the Policy was "legally correct." *McCorkle v. Metro. Life Ins. Co.*, 757 F.3d 452, 457 n.10 (5th Cir. 2014). Instead, we decide whether RSL's benefits determination is arbitrary under the terms of the Policy.

sedentary jobs, while there is no evidence to support the conclusion that he was physically capable of doing anything more.

There is evidence in the record, however, that George's depression and PTSD impaired his ability to hold down a job. Based on this evidence, RSL determined that George's mental disabilities "'*contributed to*' his overall impairment status," and that he was thus barred from receiving benefits by the Exclusion Clause. We must decide whether there is substantial evidence in the record to support RSL's determination.

This court has never considered the meaning of the phrase "caused by or contributed to by" in a similar exclusion clause, but other federal circuit courts have done so. Each of those courts has interpreted the "caused by or contributed to by" language to exclude coverage only when the claimant's physical disability was insufficient to render him totally disabled.[9] In other words, those courts have asked whether the mental disability is a but-for cause of the total disability. *See* Black's Law Dictionary 265 (10th ed. 2014) (defining "but-for cause" as a "cause without which the event could not have occurred"). We agree with this interpretation of the relevant language. We are further

---

[9] *See Eastin v. Reliance Standard Life Ins. Co.*, No. 13-6247, 2014 WL 3397141, at *2 (6th Cir. July 10, 2014) (per curiam) (explaining that administrator did not abuse discretion where evidence showed that claimant "was not totally disabled as the result of a purely physical condition"); *Maurer v. Reliance Standard Life Ins. Co.*, 500 F. App'x 626, 628 (9th Cir. 2012) (reasoning that administrator did not abuse discretion where there was evidence showing that "in the absence of any mental or nervous disorder, Plaintiff would be physically capable of working"); *Gunn v. Reliance Standard Life Ins. Co.*, 399 F. App'x 147, 153 (9th Cir. 2010) (affirming administrator's denial of benefits because there was evidence showing that claimant's physical disability "alone was not disabling, and that, but for his psychiatric mental and nervous disorders, he would be able to work"); *cf. Michaels v. The Equitable Life Assurance Soc'y of U.S. Emps., Managers, and Agents Long-Term Disability Plan*, 305 F. App'x 896, 898, 907-08 (3d Cir. 2009) (reasoning that exclusion clause, which barred coverage if "the disability arises from or on account of . . . a mental condition," would not apply if "the claimant can demonstrate that his physical disability independently precludes him from engaging in any gainful occupation").

persuaded that this interpretation is correct by the fact that RSL has itself advocated this interpretation in past litigation. *See Gunn*, 399 F. App'x at 151 (explaining that RSL's position was that "the language of the mental illness exclusion required Gunn to show that he was totally disabled solely due to his physical condition stemming from his multiple sclerosis, without taking into account the disabling effects of any mental or nervous disorders"). Thus we consider whether George's physical disabilities were independently sufficient to render him Totally Disabled.

The record shows that George's physical disabilities placed a firm ceiling on his vocational prospects.[10] Even if George were completely healed of his mental disabilities, he would still be limited to sedentary jobs. And as we explained above, there is no evidence in the record that George could have earned a salary in a sedentary job that was substantially similar to the one he earned as a helicopter pilot. Thus there is no rational connection between the fact that George's mental disabilities may have impaired his ability to hold down a sedentary job, and the conclusion that his mental disabilities caused or contributed to his Total Disability.

Accordingly, we hold that RSL abused its discretion when it determined that the Exclusion Clause limited George's right to benefits. We further hold that the district court erred when it affirmed RSL's determination on this basis.

## CONCLUSION

For the reasons explained, we REVERSE the district court's judgment for RSL; RENDER judgment for George; and REMAND the case to the district

---

[10] During the claims process, RSL repeatedly referred to an independent medical examiner's statement that "[w]ithout psychiatric factors," George "would be able to return to work at a light physical demand level type assignment." RSL appears to have treated "light physical demand" as a synonym for "sedentary work."

No. 14-50368

court to determine the amount of benefits to award to George. The court may also consider whether George is entitled to other relief, including prejudgment interest, attorney's fees, and expenses. *Cf. Alexander v. Hartford Life & Acc. Ins. Co.*, 347 F. App'x 123, 126 (5th Cir. 2009) (per curiam) (reversing administrator, rendering judgment for claimant, and remanding for damages determination).

No. 14-50368

KING, Circuit Judge, dissenting:

I agree with the majority's analysis contained in Sections I and II.A of its opinion. However, I respectfully dissent from its judgment, as I disagree with the majority's conclusion in Section II.B that RSL abused its discretion when it determined that George's disability was "caused by or contributed to by" a mental disorder.

The majority concedes that "George's depression and PTSD impaired his ability to hold down a job." In my view, this should end the inquiry. Based on this impairment, it was more than reasonable for RSL to conclude that George's mental conditions at least *contributed to* his disability, thus triggering the exclusion. The majority not only disagrees with this conclusion, but also determines—as it must, in order to reverse the judgment of the district court— that RSL abused its discretion in reaching it. Given that "[o]ur review of the administrator's decision . . . need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end," *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 (5th Cir. 2009) (internal quotation marks omitted), it is difficult to comprehend how the majority arrived at this result.

The majority reasons that, "[e]ven if George were completely healed of his mental disabilities, he would still be limited to sedentary jobs," noting that "George's physical disabilities placed a firm ceiling on his vocational prospects." I do not disagree with these points. I do disagree, however, that these facts compel the conclusion that the mental disorder exclusion is inapplicable. The majority relies on a "but-for cause" interpretation of the exclusion that is supported only by dicta contained in several cases outside of

13

this circuit.[1]  Under the construction adopted by the majority, where physical symptoms independently render a person disabled, a mental disorder—no matter its severity—can never cause or contribute to that person's disability.[2] This "but-for cause" test appears to be at odds with the plain language of the exclusion, which applies where the disability is "caused by *or contributed to by*" a mental disorder. (emphasis added).  The majority's reading also assumes a certain order of operations—that we first look at the extent of the physical symptoms before considering whether the mental condition causes or contributes to the disability.  I see nothing in the policy to support such an analysis of what is, after all, an exclusion.

Moreover, because—as the majority recognizes—George has not challenged whether RSL's interpretation was "legally correct," we are limited to deciding whether RSL's decision constituted an abuse of discretion.  At the very least, it was reasonable for RSL to determine that George's severe mental conditions contributed to his disability, particularly in view of the fact that George's own doctor so opined.  *Cf. Morris v. Standard Ins. Co.*, No. CIV. 98-

---

[1] I say "dicta" because in each of the cases cited by the majority, the court affirmed the insurer's denial of benefits on the basis of the mental disorder limitation.  *See Eastin v. Reliance Standard Life Ins. Co.*, No. 13-6247, 2014 WL 3397141, at *2 (6th Cir. July 10, 2014); *Maurer v. Reliance Standard Life Ins. Co.*, 500 F. App'x 626, 627–28 (9th Cir. 2012); *Gunn v. Reliance Standard Life Ins. Co.*, 399 F. App'x 147, 153 (9th Cir. 2010); *Michaels v. The Equitable Life Assur. Soc'y of U.S. Emps., Managers, & Agents Long-Term Disability Plan*, 305 F. App'x 896, 907–08 (3d Cir. 2009) (remanding to allow insured to demonstrate extent of physical disability).  Those courts did not have the occasion to address the question at issue here—i.e., whether a disability can be "caused or contributed to by" a mental disorder where physical symptoms independently render the claimant totally disabled.

[2] The majority implies that RSL itself adopted this "but-for cause" construction, quoting a portion of its brief in which it argued that George "had to prove that he was *physically* unable to perform the duties of *any* occupation."  However, RSL alternatively argued that "[n]otwithstanding [George's ability to] perform[] the material duties of several different alternative occupations, the district court did not err when it concluded that the evidence supports [RSL's] determination that George's [PTSD] and depressive disorder contribute to his total disability." (internal quotation marks omitted).

992-HU, 1999 WL 820202, at *5 (D. Or. Sept. 21, 1999) (concluding that plan limitation for a disability "caused or contributed to by a mental disorder" applied where the plaintiff "suffer[ed] from physical and mental disorders which . . . affected her ability to perform the material functions of her job," because "[w]hether plaintiff suffered a distinct and separate physical disability is immaterial under the [limitation's] language").

Accordingly, I would hold that RSL did not abuse its discretion in applying the mental disorder exclusion to George's claim. It is a dreadful result, driven by a dreadful provision in the policy. The more serious a claimant's physical problems (and resulting employment problems), the more likely he is to suffer from a "mental disorder" (e.g., depression), just at the time when he most needs the coverage otherwise afforded by a policy like this. But we are bound by RSL's decision applying the exclusion, which was within its discretion. Because I would affirm the judgment of the district court on this basis, I respectfully dissent.