# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30670
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
August 3, 2018

Lyle W. Cayce
Clerk

RICKY D. HAYES,

> Plaintiff - Appellant

v.

DEARBORN NATIONAL LIFE INSURANCE COMPANY,

> Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:16-CV-214

Before WIENER, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

The defendant, an insurance-plan administrator, terminated the plaintiff's disability benefits because he did not submit evidence that physical disabilities prevented him from performing gainful employment. The plaintiff challenged the denial, and the district court awarded the defendant summary judgment. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30670

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Ricky Hayes worked as an adjuster in charge for F.A. Richards & Associates, Incorporated, from 1999 until 2010. While employed, he participated in the company's group long-term disability plan, which was underwritten and administered by the defendant, Dearborn National Life Insurance Company.

The policy provides that long-term disability benefits may be awarded for twenty-four months if a participant is "continuously unable to perform the Material and Substantial Duties of [his] Regular Occupation" due to sickness or injury. After a participant receives twenty-four consecutive months of long-term disability benefits, he may continue to receive benefits only if he is "unable to engage in any Gainful Occupation." Further, a participant may not receive more than twenty-four months of benefits if his disability "is due to a Mental Disorder of any type." Accordingly, to receive disability benefits beyond twenty-four months, the participant must have a physical disability that prevents him from performing any gainful employment.

In October 2010, Hayes submitted a claim for short-term disability benefits based on diagnoses of depression, anxiety, and sleep disorder. Dearborn National approved Hayes for short-term disability benefits, and, upon their expiration, approved him for long-term disability benefits, effective April 2011. Dearborn National interviewed Hayes in connection with his application for long-term benefits and learned Hayes had undergone a total hip replacement in October 2008 and had worked for the two years between his procedure and his disability claim.

Dearborn National's letter approving Hayes's long-term benefits advised him that because his "primary disabling conditions" were mental disorders, the policy limited his benefits to twenty-four months of payments, terminating in

2

No. 17-30670

April 2013. Dearborn National reminded Hayes of the twenty-four month limitation in two separate follow-up letters in 2012.

Hayes contended he had both mental and physical disabilities. Accordingly, Dearborn National sought additional information from Hayes's treating physicians to determine whether he was eligible for a longer term of benefits based on physical disabilities.

The records submitted included a June 2011 statement from Dr. Yerger, the orthopedist who performed Hayes's hip replacement in 2008. Dr. Yerger, who had last seen Hayes on May 4, stated Hayes could sit for eight hours, walk for four hours, and stand for four hours; occasionally, frequently, and continuously carry or lift 125 pounds, 50 pounds, and 10 pounds, respectively; and frequently climb, balance, kneel, crawl, and reach above his shoulder. He further stated Hayes's hip was stable with good alignment and a normal gait. Dr. Yerger's treatment notes from the May 4 encounter contained similar observations and noted Hayes was disabled due to "severe anxiety and depression." Apparently displeased with the information submitted for his disability claim, Hayes followed up with Dr. Yerger to explain he felt limited by fatigue and he lacked the hip strength necessary to complete many of the tasks listed on the disability form. Dr. Yerger then submitted another statement listing Hayes's subjective complaints but noted that his hip was in good condition and required no medication or therapy.

Hayes's file also contained records from Dr. Vanderlick, his internist, who diagnosed him with general anxiety disorder, depression, and insomnia in September 2010. In 2011, Dr. Vanderlick further diagnosed Hayes with right-hip discomfort, chronic fatigue syndrome, fibromyalgia, hypertension, and gastroesophageal reflux disease.

In April 2013, Dearborn National had Margarey Thompson, R.N., and Dr. Miguel Velasquez conduct a clinical review of Hayes's records. They

determined no physical or objective findings supported Hayes's claim for physical disabilities that would prevent him from performing his occupation. Accordingly, in May 2013, Dearborn National sent Hayes a letter advising him of the results of the review and that his benefits were limited to the twenty-four months already paid. But the letter further stated that, based on Hayes's advising Dearborn National that he was receiving Social Security disability benefits for physical conditions, his claim for long-term benefits would remain open for another thirty days so he could submit additional information.

In July 2013, Dearborn National sent Hayes another letter advising him that, because it had not received any information from him, his claim would be closed and his benefits terminated. Hayes then submitted reports from three mental-health providers. Ms. Thompson and Dr. Velasquez conducted another clinical review and again concluded no physical findings supported diagnoses of physical ailments, and his mental-health providers could not credibly attest to physical problems. Accordingly, Dearborn National notified Hayes that his claim would remain closed.

In April 2014, Hayes appealed Dearborn National's denial of benefits and submitted additional medical information in support of his claim. In May, Dearborn National asked Hayes to undergo a Functional Capacity Exam ("FCE"), at Dearborn National's expense, to assess Hayes's physical condition. Hayes refused. Dearborn National then sent Hayes's records to Dr. Tanya Lumpkins for an independent review. During her review, she spoke with Dr. Yerger (Hayes's orthopedist) and Dr. Vanderlick (Hayes's internist). Dr. Yerger confirmed that he did not believe Hayes was physically disabled, and Dr. Vanderlick stated that, because he had not seen Hayes in two years, he was unable to discuss Hayes's current physical condition. Dr. Lumpkins then accepted Hayes's diagnoses of fibromyalgia, chronic fatigue syndrome, and hip pain. He suggested certain restrictions should be placed on Hayes's physical

No. 17-30670

activities, including that he should "avoid working at unprotected heights, driving a company vehicle, working with heavy machinery, or safety sensitive materials," and be "limited to light-duty levels of physical function in an occupational setting."

After receiving Dr. Lumpkins' report, Dearborn National referred the claim to Bob Zukowski, a vocational rehabilitation consultant, for an employability analysis. Zukowski determined Hayes could not perform his own occupation but identified seven occupations he could perform based on his physical restrictions, experience, and training. Because Hayes had no physical disabilities that would prevent him from performing any gainful employment, Dearborn National issued its final decision affirming the termination of Hayes's benefits in September 2014.

Hayes filed this action in Louisiana state court, claiming wrongful denial of disability benefits, negligence, bad faith, breach of contract, and breach of fiduciary duty. Dearborn National removed the action to the Western District of Louisiana, asserting both federal question and diversity jurisdiction. The district court then granted Dearborn National summary judgment on the state law claims as preempted by the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. § 1001 *et seq.*

Dearborn National moved for summary judgment on Hayes's ERISA claim, asserting its termination of benefits was supported by substantial evidence. Hayes opposed the motion, contending Dearborn National's conflict of interest rendered its decisionmaking process procedurally unreasonable and the denial was unsupported by the record. Treating the motions as cross motions for summary judgment, the court concluded the denial was supported by substantial evidence and awarded summary judgment to Dearborn National. Hayes timely appealed.

No. 17-30670

DISCUSSION

"This Court reviews summary judgments *de novo* in ERISA cases, applying the same standards as the district court." *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397 (5th Cir. 2007). Because the language of the "benefits plan grants the plan administrator discretionary authority to interpret the plan and determine eligibility for benefits," the termination of benefits is reviewed for an abuse of discretion. *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015). Hayes "bears the burden to show that the administrator abused its discretion." *George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 352 (5th Cir. 2015). An administrator abuses its discretion only if there is no "rational connection between" the facts and the decision. *Id.* at 353 (citation omitted). Conversely, there is no abuse of discretion "where the decision is supported by substantial evidence." *Rossi v. Precision Drilling Oilfield Servs. Corp. Empl. Benefits Plan*, 704 F.3d 362, 365 (5th Cir. 2013).

## I. The ERISA claim

### A. Procedural Unreasonableness

Hayes first contends that, in light of Dearborn National's conflict of interest, the process it used to evaluate his claim was procedurally unreasonable. Here, the plan administrator "both evaluates claims for benefits and pays benefits claims." *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 508 (5th Cir. 2013) (citation omitted). This conflict is "one factor among many" that courts consider in evaluating whether the administrator abused its discretion. *Hagen*, 808 F.3d at 1027 (citation omitted). "[A]ny one factor may 'act as a tiebreaker when the other factors are closely balanced[.]'" *Id.* at 1027–28 (quoting *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008)). A conflict of interest will be more important "where circumstances suggest a

6

higher likelihood that it affected the benefits decision," and less important "where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Glenn*, 554 U.S. at 117.    Accordingly, "a plan administrator's procedural unreasonableness informs how 'much weight to afford the apparent conflict.'" *Truitt*, 729 F.3d at 510 (citation omitted).

Hayes accuses Dearborn National of ignoring his Social Security benefits award, changing reasons for termination of benefits, and cherry-picking the record.  He contends each is evidence of procedural unreasonableness.

The failure to address a Social Security disability award is a "factor that can render the denial" of benefits an abuse of discretion.  *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 471 (5th Cir. 2010) (citation omitted).  However, Dearborn National did not ignore Hayes's Social Security award, as Hayes asserts.  Instead, it extended Hayes's benefits and invited him to submit additional documentation of physical disabilities for review.  But, in light of Hayes's failure to submit documentation of physical disabilities and the different eligibility criteria for Social Security benefits, Dearborn National determined Hayes was not eligible for additional benefits under the policy.

We are similarly unpersuaded by Hayes's assertion that Dearborn National's changing reasons for denial of benefits is evidence of procedural unreasonableness.    Hayes is correct that inconsistent reasons for benefit denials may be evidence of procedural unreasonableness.  This is because ERISA procedures are meant to "ensure meaningful review of [a] denial [of benefits]." *Rossi*, 704 F.3d at 367–68 (quoting *Wade*, 493 F.3d at 539).  A plan administrator's "changing its basis for denial of benefits" prevents both the applicant and the reviewer from contemplating the specific reasons for denial. *Id.* at 368.  Accordingly, where a plan administrator repeatedly moves the ball to avoid a full and fair review, the court will vacate a denial of benefits for procedural unreasonableness. *See id.* at 367–68.

Here, the changing reasons for Dearborn National's denial of benefits did not prohibit, but instead provided evidence of, a "full and fair review." 29 U.S.C. § 1133; *cf. Rossi*, 704 F.3d at 367–68. For example, Dearborn National initially found insufficient evidence of physical disabilities but, upon receiving further information and referring the file to an independent consultant, accepted his physical limitations. Accordingly, Dearborn National referred the case for an independent employability analysis. That it was ultimately determined that he could perform seven occupations, and was therefore ineligible for additional benefits, does not render the process unreasonable.

Finally, Hayes's assertion that Dearborn National cherry-picked the record appears to be an argument that substantial evidence supports a finding that Hayes was entitled to benefits. But this does not help Hayes. So long as substantial evidence supports Dearborn National's decision, it must be upheld, even if substantial evidence also supports Hayes. *E.g.*, *Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 333–35 (5th Cir. 2001).

In sum, Dearborn National reviewed Hayes's medical records and submissions, and it used multiple independent consultants to evaluate Hayes's claim. It invited Hayes to submit additional evidence on multiple occasions, attempted to arrange an FCE, and conducted an additional review after learning Hayes had received Social Security benefits. Because these circumstances do not "suggest a high[] likelihood that [the conflict] affected the benefits decision," we accord the conflict of interest little weight. *See Glenn*, 554 U.S. at 117. Hayes has not shown Dearborn National's evaluation was so procedurally unreasonable that it warrants vacatur.

### B. Substantial Evidence

Hayes also appears to claim Dearborn National's denial of benefits is unsupported by substantial evidence. Dr. Lumpkins accepted Hayes's

diagnoses of fibromyalgia, chronic fatigue syndrome, and hip pain, and he suggested certain restrictions should be placed on Hayes's physical activities. Even if physically disabled, though, Hayes was entitled only to a continuation of benefits if those physical problems rendered him incapable of performing *any* gainful occupation.

Accepting these restrictions, independent vocational rehabilitation specialist Zukowski found Hayes was able to perform seven different jobs given his education, training, and experience. Accordingly, Dearborn National's decision that Hayes did not meet the "any Gainful Occupation" requirement bears a "rational connection" to Zukowski's report. *See George*, 776 F.3d at 353. There was then, substantial evidence to support the denial of benefits.

## II. Attorney's Fees

ERISA permits the court to award "reasonable attorney's fee[s] and costs of action to either party." 29 U.S.C. § 1132(g)(1). This is typically left to the discretion of the district court, which did not reach the issue here. *See Rhea v. Alan Ritchey, Inc. Welfare Benefit Plan*, 858 F.3d 340, 347 (5th Cir. 2017). Regardless, "a fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)." *Hardt*, 560 U.S. at 255 (citation omitted). Hayes has not shown Dearborn National used procedurally unreasonable methods in evaluating his claim or that its decision was not supported by substantial evidence. *See George*, 776 F.3d at 352. Because Hayes had no "degree of success on the merits," he may not recover fees. *See Hardt*, 560 U.S. at 255 (citation omitted).

AFFIRMED.